UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| NMA Investments L.L.C., *doing business as* Giant Express Wash,<br><br>   Plaintiff,<br><br>v.<br><br>Fidelity and Guaranty Insurance Company, *an Iowa Corporation*,<br><br>   Defendant. | File No. 22-cv-1618 (ECT/TNL)<br><br>**OPINION AND ORDER** |

Christopher L. Paul and Josiah Lindstrom, Trautmann Martin Law, PLLC, Minneapolis MN, for Plaintiff NMA Investments L.L.C., d/b/a Giant Express Wash.

Leatha G. Wolter and M. Gregory Simpson, Meagher & Geer PLLP, Minneapolis, MN, for Defendant Fidelity and Guaranty Insurance Company.

  Plaintiff NMA Investments L.L.C. ("NMA") does business as Giant Express Wash, a laundromat located on George Perry Floyd Square in Minneapolis.[1] In this case, NMA seeks insurance coverage for lost business income under a policy issued to NMA by Defendant Fidelity and Guarantee Insurance Company ("Fidelity"). Fidelity has moved to dismiss NMA's operative Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15. The motion will be granted because NMA has failed to

---

[1]  George Perry Floyd Square is the commemorative street name given to Chicago Avenue between 37th Street East and 39th Street East. City of Minneapolis, Council Action No. 2022A-0347 (May 20, 2022).

allege facts plausibly showing that its claimed business-income losses are covered under the Fidelity policy.

I

The issue of subject-matter jurisdiction deserves some explanation. NMA brought this case originally in Hennepin County District Court against Fidelity and a second defendant, The Travelers Companies, Inc. ("Travelers"), and Fidelity and Travelers removed the case here. *See* Notice of Removal [ECF No. 1] ¶ 1.

In their Notice of Removal, Fidelity and Travelers alleged the presence of diversity jurisdiction under 28 U.S.C. § 1332(a). *Id.* ¶ 3. Regarding citizenship, they alleged that NMA is a Minnesota citizen because each of its three members—Mahmoud Abumayyaleh, Ahmad Abumayyaleh, and Nabil Abumayyaleh—is a Minnesota citizen, *id.* ¶ 4(a); *see E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015) (recognizing that an LLC's citizenship is that of its member or members), that Fidelity is a citizen of Iowa and Connecticut, Notice of Removal ¶ 4(b), and that, although Travelers is a citizen of Minnesota and New York, its citizenship should be disregarded because it was fraudulently joined. *Id.* ¶¶ 4(c)–4(f). Regarding § 1332(a)'s $75,000 amount-in-controversy threshold, Fidelity and Travelers acknowledged that NMA alleged in its original Complaint only that it sought a sum greater than $50,000. Regardless, Fidelity and Travelers alleged that settlement communications from NMA confirmed that "the amount NMA claims in this lawsuit as damages is $77,488, exclusive of interest and costs." *Id.* ¶ 5(a).

These allegations satisfied Fidelity and Travelers' burden to allege facts in their Notice of Removal plausibly showing that § 1132(a)'s complete-diversity and amount-in-

2

controversy requirements were met. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87–89 (2014). Importantly, NMA has disputed none of these allegations. It filed a Second Amended Complaint that dropped Travelers as a party without challenging Fidelity's assertions that Travelers had been fraudulently joined. ECF No. 13.² And it has not disputed Fidelity's description of the amount in controversy. Given these circumstances, there is no obvious or good reason to independently question the Notice of Removal's jurisdictional allegations. *See Dahir v. Cresco Capital, Inc.*, No. 21-cv-1700 (ECT/BRT), 2022 WL 1751270, at **6, 9 (D. Minn. May 31, 2022) (citing *Dart*, 547 U.S. at 87).

II

The relevant background facts are straightforward.³ George Floyd was murdered on May 25, 2020, prompting significant civil unrest. Second Am. Compl. ¶¶ 5, 6. Mr. Floyd's murder occurred close to NMA's laundromat. "Cement barricades, ad hoc barricades, ad hoc structures, and mementos commemorating George Floyd's death were placed in George Floyd Square, at and adjacent to the [laundromat's] premises after May

---

² The Second Amended Complaint names only Fidelity in the caption, includes a prefatory assertion making it clear that the case is against just Fidelity, and names only Fidelity (and not Travelers) in a section describing the parties. *See* Second Am. Compl. at 1, 2. Though the pleading also includes scattered references to Travelers, *see id.* at 1, 4, 6, 7, these are understood to be mistakes or at least not to suggest that NMA continues to name Travelers as a defendant in this case.

³ In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Second Amended Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Fidelity submitted extra-complaint materials in support of its motion. Regardless of whether it would be appropriate to consider them—a question not decided here—the materials need not be considered to decide the motion.

3

25[.]" *Id.* ¶ 7. Specifically, the barricades were placed "by the City of Minneapolis on Chicago Avenue north and south of NMA and on 38th Street to the east and west of NMA . . . [in] response to the evolving civil unrest and accompanying property damage in south Minneapolis." *Id.* The barricades, "mementos, and the ad hoc structures remained in place continually for over a year." *Id.* The placement of these barricades, mementos, and structures "in the street, in parking spaces, and in the bus stop caused a partial suspension of NMA's business operations." *Id.* ¶ 8. "To access NMA via 38th Street or Chicago Avenue, vehicles had to be admitted through a gate or ad hoc barricades." *Id.* ¶ 9. "NMA also lost parking spaces and a public bus stop when structures were built at and adjacent to the premises and mementos commemorating George Floyd were placed throughout George Floyd Square." *Id.* "The barricades and armed and unarmed community members that physically blocked access to NMA with their bodies directed pedestrians, traffic and public transit away from NMA." *Id.* ¶ 10.

NMA's claims are based on two coverage provisions and corresponding definitions in the Fidelity policy.[4] First, there is a general coverage provision. It says that Fidelity will pay for:

> The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration" . . . caused by direct physical loss of or damage to property at premises that are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The

---

[4]   An incomplete copy of the Fidelity policy is attached to the Second Amended Complaint. ECF No. 13-1. NMA and Fidelity have included a complete copy with their motion papers. ECF Nos. 19-1, 27-4.

> loss or damage must be caused by or result from a Covered Cause of Loss.

Simpson Decl., Ex. 1 [ECF No. 19-1] at 74. The policy defines "operations" as the insured's "business activities occurring at the described premises." *Id.* at 83. "Suspension" is defined in relevant part as: "The partial or complete cessation of your business activities." *Id.* at 84. And "period of restoration" "means the period of time after direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the [insured's] premises that [b]egins . . . 72 hours after the time of direct physical loss or damage for Business Income coverage." *Id.* at 83. The period of restoration ends on the earlier of "[t]he date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality; or [t]he date when business is resumed at a new permanent location." *Id.* The "premises that are described in the Declarations" are the laundromat's address of 3725 Chicago Avenue South in Minneapolis. *Id.* at 2.

Second, there is a "Civil Authority" provision. This provision reads, in relevant part:

> (1) When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage

> or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 76.  The civil-authority coverage begins "immediately after the time of the first action of civil authority that prohibits access to the described premises" and continues for 30 days. *Id.*

### III

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The parties agree that Minnesota law governs NMA's claims and controls interpretation of the Fidelity policy. NMA's claims require "[i]nterpretation of [the] insurance policy and application of the policy to the facts," which in Minnesota "are questions of law." *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). Unambiguous terms are given their "plain and ordinary meaning," while ambiguous language is construed liberally in favor of coverage. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (citations omitted). A court may

6

not create ambiguities where none exist. *Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 706 (Minn. 2013).

A

The Fidelity policy's general coverage provision requires that a business-income loss be "caused by direct physical loss of or damage to [insured] property at" the laundromat. This provision is "not triggered unless 'there [is] some physicality to the loss or damage of property.'" *Torgerson Properties, Inc. v. Cont'l Cas. Co.*, 38 F.4th 4, 5–6 (8th Cir. 2022) (quoting *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021)).

In its Second Amended Complaint, NMA alleges that it experienced direct physical loss in three ways: "(i) placement of mementos commemorating George Floyd in the NMA parking spaces, in the bus stop, and on the sidewalk; . . . (ii) placement of structures in the street and in parking spaces;" and (iii) the "loss of direct vehicle and pedestrian access . . . caused by the actions of armed and unarmed community members that physically blocked access to the NMA premises with their bodies, supplemented the [City-placed] cement barricades with their own ad hoc barricades, and directed vehicle and pedestrian traffic away from the [] premises." Second Am. Compl. ¶¶ 39, 40.[5] To be clear, NMA does not allege that the placement of these structural and human barriers *caused* physical damage to property; NMA alleges that the barriers themselves *are* physical damage.

---

[5] Fidelity acknowledged at the hearing that, for purposes of this motion and the general lost-business-income coverage provision, it does not dispute that "property at premises that are described in the Declarations," Simpson Decl., Ex. 1 at 74, includes the sidewalks and streets near the laundromat.

7

These allegations do not plausibly show loss or damage in the relevant sense to either the laundromat or to the public area surrounding the laundromat. Barriers ordinarily are not themselves physical property damage. They might divert vehicle or pedestrian traffic away from damage or areas in need of repair—like a pothole-ridden street or a closed escalator—but it seems implausible to refer to a barrier itself as physical property damage. NMA cites no case reaching that or a similar conclusion. And as noted, NMA alleges no facts in its Second Amended Complaint suggesting that the barriers or memorials in the Square caused some kind of separate physical damage.

Perhaps realizing that this aspect of its theory regarding the barriers is not strong, NMA pivoted at the hearing to arguing that the *duration* of the barriers' presence resulted in direct physical loss. This is not persuasive because the duration of the restricted access caused by the barriers is not physical loss or damage under any definition of those terms. In other words, if the barriers are not themselves physical damage to property on day one, it's hard to understand how (without more) they become that after day one hundred.

NMA argues that its allegations here are like those in cases asserting loss of business income because of contamination, such as from asbestos or pesticides. This is not convincing. The Second Amended Complaint includes no allegations showing how the barriers or memorials might have acted as contaminants like asbestos or pesticides. And in cases where contamination caused business interruption, Minnesota courts still require a finding of physical damage. So, for example, in *Sentinel Management Company v. Aetna Casualty & Surety*, 615 N.W.2d 819 (Minn. 2000), the court held that the "physical loss" requirement was met if an apartment building demonstrated that asbestos contamination

endangered tenant health because "the property [would be] rendered useless by the presence of contaminants." *Id.* at 825–26 (quoting *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997)). The cases NMA cites to support this argument cast no doubt on the proposition that, absent "a physical alteration, physical contamination, or physical destruction," *Oral Surgeons*, 2 F.4th at 1144, the business-loss provision does not apply. *See id.* (citing 10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical' . . . is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.")). Any other interpretation of the policy language "would render the word 'physical' meaningless." *Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834, 838 (8th Cir. 2006)).[6]

---

[6] There is another reason NMA's claim under the general lost-business-income provision fails. To be covered, lost business income must be sustained "due to the necessary 'suspension'" of an insured's business operations. Simpson Decl., Ex. 1 at 74. NMA does not allege that it suspended any of its business activities, either partially or completely. NMA's theory is that its customers or potential customers experienced greater difficulty traveling to the laundromat due to the barriers and that this resulted in less business. A decrease in customers and business is not a suspension of business activities. *See, e.g.*, *Apartment Movers of Am., Inc. v. OneBeacon Lloyd's of Tex.*, No. A.3:04-CV-0278-B, 2005 WL 106477, at *3 (N.D. Tex. Jan. 19, 2005) (holding that a lack of customer demand is not a suspension of business activities; "there is no 'necessary suspension' simply because they do not have as much business as they once did").

B

The primary disputed issue regarding the civil-authority coverage provision is whether NMA has alleged facts plausibly showing that the City "prohibited" access to the laundromat. The general rule is that coverage under this provision "is only available when access is completely prohibited," and that allegations or evidence showing that "ease of access was diminished" do not show that access was prohibited. *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, No. A04-1963, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005); *see Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137, 1139–1142 (10th Cir. 2004) (collecting and surveying authorities). Though neither party has cited a Minnesota Supreme Court case addressing this question, concluding that *TMC Stores* is the "best evidence of Minnesota law," *Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) (quoting *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)), makes good sense here for the straightforward reason that it adheres to the consensus majority rule.

To show that the City prohibited access, NMA alleges:

> The first element [of prohibited access] is met because the City of Minneapolis placed the cement barricades as part of its response to civil unrest in South Minneapolis. The civil unrest included the placement of mementos and structures throughout George Floyd [S]quare by pedestrians and the presence of armed and unarmed community members in the streets within George Floyd [S]quare. Mementos and structures were placed in NMA parking spaces and the NMA bus stop.

Second Am. Compl. ¶ 50. NMA does not allege that City-placed barricades outlawed or barred all potential customers from accessing the laundromat or surrounding area. And in

10

its memorandum in opposition to Fidelity's Rule 12(b)(6) motion, NMA argues that customers' ability to gain only "intermittent access" should be enough to meet the civil-authority provision's prohibited-access element. Pl.'s Mem. in Opp'n [ECF No. 24] at 15.

NMA cites no Minnesota case adopting or applying a rule that "intermittent access" shows a prohibition on access, and its argument seems at odds with *TMC Stores*, 2005 WL 1331700, at *4. NMA attempts to distinguish *TMC Stores*. It points out that the municipal authority in that case tried to minimize the impact of its construction activities on the plaintiff's store by providing signage advertising that the store was open, arranging for alternative parking, and providing additional lighting. *Id.* at *1. NMA asserts that the City of Minneapolis did nothing like that here. Pl.'s Mem. in Opp'n at 17–18. This argument is not persuasive because the municipal authority's provision of these mitigation measures in *TMC Stores* played no role in the case's outcome. As the court explained:

> It is undisputed that TMC's store remained open throughout the construction and that customers were able to enter the store even though ease of access was diminished. Even if more difficult or less convenient access discouraged customers from patronizing TMC's store, this was not a prohibition of access.

*Id.* at *4. That is what we have here.

*

NMA's Second Amended Complaint will be dismissed with prejudice. *See Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1079–80 (D. Minn. 2021) (describing considerations governing determination of whether to dismiss a complaint with or without prejudice). NMA has amended its original Complaint twice. *See* ECF Nos. 1-1 (original

11

Complaint); 7 (stipulation noting that NMA had served an Amended Complaint)[7]; 13 (Second Amended Complaint). It relied on the Second Amended Complaint to oppose the motion and did not request an opportunity to amend. And it is difficult to think of what factual allegations NMA might add to a third amended version of its complaint that might change things.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Fidelity and Guaranty Insurance Company's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 15] is **GRANTED**.

2. Plaintiff NMA Investments L.L.C.'s Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 13, 2022      s/ Eric C. Tostrud
                               Eric C. Tostrud
                               United States District Court

---

[7] Though NMA served its first Amended Complaint, the docket reflects that this version of the pleading was not filed.